UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

**GLORIA GISANGA GULENGA,**

      **Plaintiff,**

      v.

**FIELD OFFICE DIRECTOR, U.S. CITIZENSHIP AND IMMIGRATION SERVICES,** *et al.***,**

      **Defendants.**

Case No. 1:23-cv-213

JUDGE DOUGLAS R. COLE

## OPINION AND ORDER

Plaintiff Gloria Gisanga Gulenga is a citizen of the Democratic Republic of Congo currently living in this country. She filed this lawsuit challenging the United States Citizenship and Immigration Services' (USCIS) decision to deny her request for an adjustment of status to lawful permanent resident via a filed Form I-485 (Application to Register Permanent Residence or Adjust Status). (Compl., Doc. 9).[1] Defendants now move to dismiss her Complaint, under either Federal Rule of Civil Procedure 12(b)(1) or (b)(6), arguing that the Court lacks subject-matter jurisdiction over Gulenga's claims or, in the alternative, that she has failed to state a claim on which relief may be granted. (Mot. to Dismiss, Doc. 21, #156–57). For the reasons stated below, the Court **GRANTS** Defendants' Motion to Dismiss (Doc. 21) and

---

[1] There are three versions of the Complaint on the docket. The first lacks an attached civil cover sheet. (*See* Doc. 1). The text of the second is not searchable. (*See* Doc. 6). So the Court refers to the third version (Doc. 9) throughout this Opinion and Order, as that version is the most recent, attaches the required cover sheet, and is text searchable.

**DENIES** Plaintiff's Motion for Oral Arguments (Doc. 25) as moot. The Court thus **DISMISSES** Gulenga's Complaint (Doc. 9) **WITHOUT PREJUDICE** for lack of jurisdiction.

## BACKGROUND

Gulenga, a citizen of the Democratic Republic of Congo, entered the United States with a B-2 visa, *see* 8 C.F.R. § 214.2(b), that authorized her to remain in the United States until May 21, 2015. (Doc. 9 ¶¶ 7, 10, #98–99). She then filed a Form I-589, Application for Asylum and for Withholding of Removal, on December 29, 2014—before her B-2 visa expired. (*Id.* ¶ 11, #99; *see id.* at #111–12). The USCIS Chicago Asylum Office interviewed her, (*id.* ¶ 12-13, #99; *see id.* at #114), then issued a Notice of Intent to Deny her asylum application on April 29, 2015. (Doc. 21-2). After receiving Gulenga's response and deeming it lacking, the USCIS Chicago Asylum Office referred her asylum application to Immigration Court. (Doc. 21-1).

Gulenga's father then filed a Form I-130, Petition for Alien Relative, with USCIS on her behalf.[2] (Doc. 9 ¶ 14, #99). Such petitions permit a United States citizen or lawful permanent resident to "help[] an eligible relative apply to immigrate to the United States and [to] get a Green Card." *I-130, Petition for Alien Relative*, USCIS, https://perma.cc/LFV9-FSJ8. Approval of such a request "does not give [the applicant's] relative any immigration status or benefit" but allows the applicant's

---

[2] The Complaint lists Gulenga's father as a United States citizen. (Doc. 9 ¶ 7, #98). The agency filings instead list her as the child of a permanent resident. (*Id.* at #116, 130, 134). But, for purposes of this Opinion, it does not matter which characterization, citizen or permanent resident, is correct because either category is a valid basis to submit a Form I-130. *I-130, Petition for Alien Relative,* USCIS, https://perma.cc/LFV9-FSJ8.

2

relative to apply to become a lawful permanent resident (Green Card holder) by applying for an adjustment of status via a Form I-485. *Id.* On March 30, 2017, the USCIS approved Gulenga's father's petition on her behalf. (*Id.* ¶ 14, #99; *id.* at #116).

Some six months later, in connection with the earlier referral of Gulenga's asylum application to the Immigration Court, USCIS issued Gulenga a Notice to Appear (NTA). (*Id.* ¶ 15, #99). The NTA officially triggered her removal proceedings. (*Id.*; *id.* at #118). While those proceedings were still pending, relying on USCIS's approval of her father's petition, Gulenga filed a Form I-485 on February 1, 2021. (*Id.* ¶ 17, #99). A Form I-485 permits an alien "to apply for lawful permanent resident status." *I-485, Application to Register Permanent Residence or Adjust Status,* USCIS, https://perma.cc/GE9Z-ZEQF.

After that, on August 21, 2021, the Immigration Judge in her removal proceedings determined that Gulenga's NTA was defective because it did not list the date and time of her initial hearing. (Doc. 9, #118, 122). So the Immigration Judge terminated the removal proceedings without prejudice on August 27, 2021, pursuant to *Niz-Chavez v. Garland*, 593 U.S. 155 (2021). (Doc. 9 ¶ 18, #99–100; *id.* at #122–28.).

Following the termination of the removal proceedings, USCIS denied Gulenga's request for adjustment of status because USCIS concluded that she lacked a lawful immigration status when she filed her I-485 form. (*Id.* ¶ 19, #100; *id.* at #130–31). Gulenga then requested USCIS to reconsider its decision by filing a Form I-290B, Notice of Appeal or Motion. (*Id.* ¶ 20, #100; *id.* at #134).

After USCIS affirmed its prior decision (*id.* ¶ 21, #100; *id.* at #133–34), she brought this action. She names two defendants: Julie Decker, Field Office Director of USCIS, in her official capacity; and the United States Department of Homeland Security under the care of Secretary Alejandro Mayorkas, who is also sued in his official capacity. (*Id.* at #96, 98).

The Complaint claims USCIS's decisions to deny her request for an adjustment of status via her filed Form I-485 and to affirm its decision upon reconsideration after she filed her Form I-290B violated: (1) the Administrative Procedure Act (APA), because Defendants' procedures were arbitrary and capricious (*id.* at #100–01);[3] (2) the Mandamus Act, because Defendants had a mandatory duty to grant her such relief (*id.* at #101–02); and (3) "the Due Process Clauses of the United States" (*id.* at #102). Based on these claims, Gulenga seeks declaratory relief and injunctive relief ordering Defendants to approve her application for adjustment of status and to grant her lawful permanent resident status. (*Id.* at #103).

Defendants responded by moving to dismiss. (Doc. 21). First, invoking Federal Rule of Civil Procedure 12(b)(1) and citing *Patel v. Garland*, 596 U.S. 328 (2022), they argue that the Court should dismiss the case because it lacks subject-matter jurisdiction over Gulenga's claims. (*Id.* at #161–65). In the alternative, they argue

---

[3] Plaintiff asserts that both the denial of the Form I-589 and the denial of the Form I-290 violated the APA. (Doc. 9 ¶ 23, #100). But she only filed the Form I-290 in response to USCIS' denial of Form I-589. And, while denial of adjustment of status turned on whether Plaintiff maintained lawful permanent resident status, denial of asylum did not. So the Court construes the reference to Form I-589 in paragraph 23 of the Complaint as a typo and concludes that Gulenga meant to refer to Form I-485, as she does elsewhere in her Complaint. (*Id.* ¶ 30, #101).

4

that Gulenga has failed to state a claim because it is clear that she was in an unlawful immigration status when she filed her I-485 seeking adjustment of status, which in turn means she was statutorily ineligible for adjustment of status. (*Id.* at #165–69). For that reason, they argue that the Court should dismiss the Complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). (*Id.*).

Gulenga responded. (Doc. 22). First, she argues that *Patel* does not deprive this Court of jurisdiction because "a USCIS decision, albeit touching on an adjustment of status, is not a judgment." (*Id.* at #179; *id.* at #180 ("Because *Patel* concerns a judgment of an immigration court, the Supreme Court could not possibly issue a holding on [8 U.S.C. §]1252(a)(2)(B)(ii) which concerns decisions by immigration agencies … [Dicta] are not mandates that bind any lower court including this district court.")). Second, she argues that *Niz-Chavez v. Garland* entitles her to relief because the NTA that Defendants issued to her was invalid. (Doc. 22, #184–87). Third, she argues that the Administrative Procedure Act and 28 U.S.C. § 1331 remain viable avenues for this Court's review of the merits of her claims. (*Id.* at #187–90). She argues that the Mandamus Act, 28 U.S.C. § 1361, entitles her to injunctive relief. (*Id.* at #190–91). And she argues that based on general notions of due process, her claim should be heard in this Court instead of having her "wait for a final order of removal in order to seek vindication of her rights." (*Id.* at #191–93).

Defendants have since replied. (Doc. 24). And these matters are now ripe for the Court's review.

5

**LEGAL STANDARDS**

A.    **Federal Rule of Civil Procedure 12(b)(1)**

"If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3). And when a defendant challenges the Court's jurisdiction under Federal Rule of Civil Procedure 12(b)(1), "the *plaintiff* has the burden of proving jurisdiction in order to survive the motion." *Rogers v. Stratton Indus., Inc.*, 798 F.2d 913, 915 (6th Cir. 1986).

A challenge to the court's subject-matter jurisdiction under Rule 12(b)(1) can be either facial or factual. *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990). "A *facial* attack … merely questions the sufficiency of the pleading. In reviewing such a facial attack, a trial court takes the allegations in the complaint as true[.] … On the other hand, when a court reviews a … *factual* attack, … no presumptive truthfulness applies to the factual allegations." *Id.* And when reviewing a factual attack on jurisdiction courts may consider sources outside the pleadings. *Id.* ("[A] trial court has wide discretion to allow affidavits, documents and even a limited evidentiary hearing to resolve disputed jurisdictional facts."); *Nichols v. Muskingum Coll.*, 318 F.3d 674, 677 (6th Cir. 2003) ("[T]he court may consider evidence outside the pleadings to resolve factual disputes concerning jurisdiction, and both parties are free to supplement the record by affidavits.").

B.    **Federal Rule of Civil Procedure 12(b)(6)**

Separately, when a plaintiff fails to state a claim on which relief can be granted, the appropriate vehicle for dismissal is Federal Rule of Civil Procedure 12(b)(6). To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must allege

6

"sufficient factual matter … to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). While a "plausible" claim for relief does not require a showing of probable liability, it requires more than "a sheer possibility that a defendant has acted unlawfully." *Id.* The complaint must allege sufficient facts to allow the Court "to draw the reasonable inference that the defendant is liable." *Id.*

At the motion-to-dismiss stage, the Court accepts the facts of the Complaint as true. *Id.* But that does not mean the Court must take everything plaintiffs allege at face value, no matter how unsupported. The Court may disregard "naked assertions" of fact or "formulaic recitations of the elements of a cause of action." *Id.* (cleaned up).

## LAW AND ANALYSIS

Because the Court must have jurisdiction over this case to reach the merits, it begins with Defendants' arguments that the Court lacks subject-matter jurisdiction over the dispute. And because that analysis leads the Court to dismiss this action, that is as far as the analysis goes.

Three sections of the Immigration and Nationality Act (INA) bear on Gulenga's challenge to the USCIS's denial of her request for adjustment of status. First, § 245(a) of the INA, 8 U.S.C. § 1255(a), provides that "[t]he status of an alien who was inspected and admitted or paroled into the United States … may be adjusted by the Attorney General, in his discretion and under such regulations as he may prescribe, to that of an alien lawfully admitted for permanent residence." Second, § 242(a)(2)(B)(i) of the INA (subparagraph (B)), 8 U.S.C. § 1252(a)(2)(B)(i), strips

courts of jurisdiction to review "any judgment regarding the granting of relief under section … 1255"—section 245 of the INA. But third and finally, § 242(a)(2)(D) of the INA (subparagraph (D)), 8 U.S.C. § 1252(a)(2)(D), sets forth a rule of construction for interpreting certain jurisdiction-stripping provisions of § 242 of the INA. More specifically, this latter provision says that the Court should not construe, as relevant here, the jurisdiction-stripping provisions in subparagraph (B) "as precluding review of constitutional claims or questions of law raised upon a petition for review filed with an appropriate court of appeals." In other words, subparagraph (D) requires courts to adopt a particular interpretive lens, when construing language purporting to deprive courts of jurisdiction under subparagraph (B), as to the claims that fall within subparagraph (D)'s domain.

So, to decide whether jurisdiction is available here, the Court must first decide whether the decision at issue falls within subparagraph (B)'s jurisdiction-stripping scope in the first instance. Then, if it does, the Court must consider whether the decision also falls within subparagraph (D), thereby preventing the jurisdiction stripping that would otherwise arise from subparagraph (B).

**A.     Subparagraph (B)'s Jurisdiction-Stripping Provision**

There was formerly a circuit split about how broadly courts should interpret the scope of subparagraph (B), the jurisdiction-stripping provision directly applicable here. *Patel*, 596 U.S. at 336 n.1. But the Supreme Court resolved the split in *Patel*. According to the Supreme Court, "[subparagraph (B)] does not restrict itself to certain kinds of decisions. Rather, it prohibits review of *any* judgment *regarding* the granting

of relief under § 1255 [(i.e., § 245 of the INA)] and the other enumerated provisions. … That plainly includes factual findings." *Id.* at 338–39. But that broad language may not provide the whole answer here. *Patel* involved a petition asking the federal court of appeals to review an immigration judge's determinations during removal proceedings. *Id.* at 334–35. Here, by contrast, Gulenga seeks to challenge USCIS determinations made outside the removal proceedings context. The Sixth Circuit has not yet addressed whether *Patel*, which speaks in terms of "judgments," also applies to USCIS decisions to deny requests for adjustment of status. So this Court must do so. But as the Supreme Court noted in another context, "[t]o decide, we start with the text of the statute, and as it turns out, it is not necessary to go any further." *Babb v. Wilkie*, 140 S.Ct. 1168, 1172 (2020) (citation omitted).

Recall that subparagraph (B) enumerates several provisions as to which it bars review, one of which is the provision at issue here—§ 245 of the INA, 8 U.S.C. § 1255(a). So the relevant question is not whether § 245 is swept under subparagraph (B). Rather, the question is whether denial of an adjustment-of-status application and the factual findings supporting that denial constitute "judgments" as the term is used in "any judgment regarding the granting of relief under section … 1255." 8 U.S.C. § 1252(a)(2)(B)(i).

The Court concludes that they do. Not only is the text clear on its face, but the Supreme Court has also defined the contours of the term "judgment" for lower courts. And according to the Supreme Court, judgment in this context means "any authoritative decision … encompass[ing] any and all decisions relating to the

9

granting or denying of discretionary relief." *Patel*, 596 U.S. at 337–38 (adopting the quoted definition of "judgment," which had been proffered by the court-appointed amicus curiae); *see Judgment*, Merriam-Webster Dictionary, https://perma.cc/M5PF-Q238 (defining judgment as "a formal utterance of an authoritative opinion"). "That plainly includes factual findings." *Patel*, 596 U.S. at 339. And that should be true regardless of who made those findings, so long as the findings constitute an "authoritative decision" on the issue.

So how does that play out here? The underlying provision at issue specifies that the Attorney General "may" adjust aliens' status "in his discretion." 8 U.S.C. §1255(a). Not only does the statute contain the word "discretion," but "[t]he word 'may' clearly connotes discretion." *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 533 (1994). So granting or denying an adjustment-of-status application is clearly "discretionary relief." *See Patel*, 596 U.S. at 337. And under the definition given above, both the denial of relief and the factual findings supporting that decision are clearly Defendants' "authoritative decisions" encapsulating their denial of that discretionary relief. Therefore, under the *Patel* Court's definition of judgment, Defendants' denial of Gulenga's request for an adjustment of status pursuant to her filing of a Form I-485 and the associated factual findings fall within subparagraph (B), 8 U.S.C. § 1252(a)(2)(B)(i). That in turn means that this Court lacks jurisdiction to hear Gulenga's case.

Case law reinforces this conclusion. For starters, the *Patel* Court itself acknowledged that while "[t]he reviewability of [USCIS denials of discretionary

10

relief] … [wa]s not before [the court] and [they] d[id] not decide it[,] … it is possible that Congress did, in fact, intend to close that door." *Id.* at 345. More importantly, other courts have concluded that judicial review is unavailable when the USCIS denies adjustment-of-status applications under § 245 of the INA. *E.g, Abuzeid v. Mayorkas*, 62 F.4th 578, 585 (D.C. Cir. 2023) ("We recognize that our interpretation of § 1252(a)(2)(B)(i) leaves no path for judicial review of denials of adjustment of status by USCIS. That result is dictated by the plain meaning of the statute and by the reasoning of *Patel*."); *Britkovyy v. Mayorkas*, 60 F.4th 1024, 1029 (7th Cir. 2023) ("While *Patel* does not resolve the question presented in this appeal, its reasoning supports the conclusion that judicial review is unavailable … [T]he plain language of § 1252(a)(2)(B)(i) … strips us of jurisdiction to review denials of relief by USCIS under § 1255."); *Rabinovych v. Mayorkas*, 624 F. Supp. 3d 19, 25–26 (D. Mass. 2022) (collecting cases). This Court will follow suit and hold that subparagraph (B) applies to the decision at issue here.

Plaintiff offers three arguments opposing this interpretation. She begins by arguing that "a USCIS decision, albeit touching on an adjustment of status, is not a judgment." (Doc. 22, #179). But, as discussed above, that argument is a non-starter because it contradicts how the Supreme Court has defined "judgment" in the statute. *Patel*, 596 U.S. at 337–38. And her citation to *Hernandez v. Garland*, 59 F.4th 762 (6th Cir. 2023), does not help her because that case examined the scope of subparagraph (D), which, as discussed below, does not apply to requests for district court review.

11

Plaintiff's APA argument is similarly unpersuasive. She relies on *Barrios Garcia v. U.S. Dep't of Homeland Sec.*, 25 F.4th 430 (6th Cir. 2022), a pre-*Patel* decision entertaining a challenge under the APA. (Doc. 22, #189 ("Plaintiff respectfully submits that *Patel* has no impact on *Barrios Garcia*.")). But *Barrios Garcia* is distinguishable from this case because the plaintiffs in *Barrios Garcia* were suing over an "unreasonable delay" in placing petitioners on a U-visa waitlist and in adjudicating their applications; they were not disputing final adjustment-of-status decisions. *Barrios Garcia*, 25 F.4th at 435–36. The actions challenged in *Barrios* fall outside subparagraph (B) because the USCIS's "unreasonable delay" in acting clearly does not constitute an "authoritative decision." If anything, such foot dragging represents a fundamental unwillingness to make a decision, authoritative or otherwise. In any event, "Congress has sharply limited judicial review in the immigration context, and the APA's general provision authorizing judicial review of final agency actions must yield to immigration-specific limitations." *Britkovyy*, 60 F.4th at 1027 (cleaned up). *See Burdue v. F.A.A.*, 774 F.3d 1076, 1081 (6th Cir. 2014) ("The APA provides a general cause of action[.] … Although there is a presumption favoring judicial review, if the challenged agency action is committed to agency discretion by law, this presumption and the cause of action provided by [5 U.S.C.] § 702 no longer apply." (cleaned up)). In other words, when the immigration-specific jurisdictional limitation embodied in subparagraph (B) applies (as it does here), it forecloses the more general cause of action the APA would otherwise provide.

Finally, Gulenga argues that, nothwithstanding subparagraph (B), she is separately entitled to injunctive relief under the Mandamus Act, 28 U.S.C. § 1361. Putting aside for the moment whether mandamus is properly referred to as "injunctive relief," Gulenga's argument is unavailing here. "Mandamus is available only if: (1) the plaintiff has a clear right to relief; (2) the defendant has a clear duty to act; and (3) there is no other adequate remedy available to the plaintiff." *Carson v. U.S. Off. of Special Counsel*, 633 F.3d 487, 491 (6th Cir. 2011) (cleaned up). The Court need not opine on the first factor because Gulenga fails to meet either the second or third. As to the second factor, only non-discretionary duties can create a clear duty to act. *Heckler v. Ringer*, 466 U.S. 602, 616 (1984) ("The common-law writ of mandamus, as codified in 28 U.S.C. § 1361, is intended to provide a remedy for a plaintiff … only if the defendant owes him a clear nondiscretionary duty."). But, as discussed above, adjustment-of-status decisions are discretionary. And as to the third factor, despite Gulenga's protestations to the contrary, the Court agrees with Defendants that she is not without an adequate remedy if the Court lacks jurisdiction to review her case. After Defendants denied her request for adjustment of status, Plaintiff sought reconsideration of that decision by filing a Form I-290B. Although USCIS eventually denied that as well, Plaintiff still received reconsideration of the decision in her case. And as Plaintiff implicitly acknowledges, (*see* Doc. 22, #192; *cf.* Doc. 9, #134 (USCIS's denial of adjustment of status "is without prejudice to future applications[.]")), adjustment-of-status requests can be raised during removal proceedings—after which she may raise purely legal or constitutional challenges in a properly filed

13

petition for review. *See Addo v. Mukasey*, 267 F. App'x 442, 447–48, 448 n.4 (6th Cir. 2008) (concluding that the Sixth Circuit had jurisdiction over the alien's properly filed petition to review purely legal and constitutional challenges to the agency's denial of adjustment of status under § 245 during removal proceedings based). So she falls short of the standard required for a writ of mandamus. And the broader argument that foreclosing avenues for judicial relief is problematic as a matter of due process, (Doc. 22, #191–93), does not persuade the Court that it should decide this case differently. Not only is there a means for eventual judicial review, but, importantly, "policy concerns cannot trump the best interpretation of the statutory text." *Patel*, 596 U.S. at 346.

In short, none of the counterarguments are persuasive. So subparagraph (B) deprives the Court of jurisdiction unless Gulenga's claim falls within subparagraph (D), the topic to which the Court turns next.

**B.    Subparagraph (D)'s Jurisdictional Safe Harbor**

As relevant here, Subparagraph (D) prevents the jurisdiction stripping that would otherwise occur for decisions covered by subparagraph (B), when a litigant challenges those decisions by way of "constitutional claims or questions of law raised upon a petition for review filed with an appropriate court of appeals." The problem for Gulenga is that the plain meaning of "court of appeals" extends only to circuit courts, not district courts like this one. *Camaj v. Leutbecker*, No. 09-11259, 2009 WL 4645926, at *3 (E. D. Mich. 2009) ("[T]he unambiguous language of § 1252(a)(2)(D) vests jurisdiction of constitutional claims exclusively in the United States Court of

14

Appeals."). And the syntactic structure of subparagraph (D) suggests that the clause "raised upon a petition for review filed with an appropriate court of appeals" modifies the entire preceding compound phrase "constitutional claims or questions of law" uniformly. Read that way, subparagraph (D) provides no help to Gulenga here in her efforts to obtain district court review of a USCIS determination.

Admittedly, there are two other ways the Court could potentially read the statutory language. One would construe "raised upon a petition for review filed with an appropriate court of appeals" as modifying only "questions of law," and not "constitutional claims." That presumably would mean that district courts would have jurisdiction to review the latter (as § 1331 generally grants jurisdiction over constitutional claims, and subparagraph (D) would mean that the jurisdiction-stripping provisions in the INA (such as subparagraph (B)) would not be "construed as precluding review"). The other construction would read "court of appeals" as referring to circuit courts when modifying "questions of law" but as including both circuit courts and district courts when modifying "constitutional claims" (or vice versa). In other words, "raised upon a petition for review filed with an appropriate court of appeals" would modify both "questions of law" and "constitutional claims," but "court of appeals" would have two different meanings when modifying the two different objects. But that interpretation is untenable on its face. *Reno v. Bossier Par. Sch. Bd.*, 528 U.S. 320, 329 (2000) ("[W]e refuse to adopt a construction that would attribute different meanings to the same phrase in the same sentence, depending on

15

which object it is modifying."). The Court rejects both these alternative readings as unreasonably tortured constructions of the text.

Putting that all together: based on the plain text, subparagraph (D) does not permit construing certain enumerated INA provisions to strip courts of jurisdiction only as to *certain arguments* raised before *circuit courts* in *petitions for review*—not as to any claims (constitutional or otherwise) raised before district courts in any other kind of case. So the Court concludes that subparagraph (D) does nothing to save Gulenga's claims from the otherwise-applicable jurisdiction-stripping provision in subparagraph (B).

Plaintiff disagrees. She "submits [subparagraph (D) applies in cases before] both appeals and trial courts," such that federal district courts may consider "pure question[s] of law" notwithstanding the jurisdiction-stripping provision in subparagraph (B). (Doc. 22, #178). But, for the reasons discussed above, that reading contradicts the statute's plain language, not least because a district court is not, in any common vernacular, a "court of appeals." And Plaintiff neither points to other sections of the statute in which Congress used "court of appeals" to refer to a district court nor offers any cases that support her reading. So the Court declines to adopt her reading of the statutory text and considers subparagraph (D) to have the plain meaning described above. That means it does not change the result of analyzing subparagraph (B)—the Court lacks jurisdiction to hear Gulenga's case.

Accordingly, the Court grants the Motion to Dismiss for lack of jurisdiction under Rule 12(b)(1) and dismisses the case without prejudice. *Ernst v. Rising*, 427

F.3d 351, 367 (6th Cir. 2005). And because of that the Court need not (indeed, cannot) reach the merits of the case, so it will not consider Defendants' Rule 12(b)(6) Motion to Dismiss.

## CONCLUSION

For the reasons discussed above, the Court **GRANTS** Defendants' Motion to Dismiss (Doc. 21) and **DENIES** Plaintiff's Motion for Oral Arguments (Doc. 25) as moot. The Court thus **DISMISSES** Gulenga's Complaint (Doc. 9) **WITHOUT PREJUDICE** for lack of jurisdiction. The Court **DIRECTS** the Clerk to enter judgment and to **TERMINATE** this case on its docket.

**SO ORDERED.**

January 23, 2024
**DATE**

**DOUGLAS R. COLE**
**UNITED STATES DISTRICT JUDGE**